IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| J.J.B. HILLIARD, W.L. LYONS, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ERIC SAUL, ) <br> ) <br> Defendant. ) | NO. 3:06-0454 <br> JUDGE HAYNES |

## MEMORANDUM

Plaintiffs, J.J.B. Hilliard and W.L. Lyons, Inc., filed this action under the Federal Arbitration Act, 9 U.S.C. §§ 6 and 10, seeking to vacate an arbitration award of $395,434 to the Defendant Eric Saul. Under the parties' agreement, an arbitration proceeding was held after which a panel of three arbitrators ruled in favor of the Plaintiffs' claims for federal and state securities violations as well as various state law claims for retaliatory discharge.

In this motion to vacate and supporting memorandum (Docket Entry Nos. 1 and 2), Plaintiffs assert that the arbitration panel's favorable rulings on the Defendant's claims under the Tennessee Public Protection Act, ("TPPA"), Tenn. Code Ann. § 50-1-304 and common law claim for retaliatory discharge evince a manifest disregard of relevant Tennessee law. In particular, Plaintiffs argue that the TPPA requires the Defendant's protected activity to be the "sole" cause of his termination. Plaintiffs assert that the evidence clearly established that the Plaintiffs terminated the Defendant for his ethical violations. Plaintiffs argue that because the Defendant was terminated for this reason, Defendant's claim that he was discharged for his complaints about the Plaintiffs' securities violations precludes any recovery under the TPPA . Similarly, the Plaintiffs argue that the ethical violation,

was the substantial cause for the Defendant's termination, not securities violation because, the individual who made the termination decision was unaware of the Defendant's complaints of securities violation. Thus, under Tennessee law, this evidence can not support Defendant's common law claim for retaliatory discharge. Plaintiffs contend that the arbitration panel's "manifest disregard" of relevant Tennessee law is an established ground to set aside the arbitration panel's award.

In response and in its cross-motions to affirm the arbitration panel's award (Docket Entry Nos. 11 and 12), the Defendant argues that ample evidence supports the arbitration panel's award on these claims. At oral argument, the Defendant asserted that his complaint about the Plaintiffs' securities violations was a basis of the arbitration panel's award. This finding and other proof supports the arbitration panel's award on his common law retaliatory discharge claim. The Defendant also seeks additional interest and attorney's fees

### A. Summary of the Arbitration Record[*]

The material facts are that in October 2002, the Defendant, an employee of W.L. Lyons, Inc., ("WLL") a securities firm, invested in a company with other WLL investor-clients. That investment failed and the Defendant suffered a personal loss and as did other investors and clients of WLL. To recoup his losses, he Defendant secured from the failing firm, $50,000 in oriental rugs. Plaintiffs contend that the Defendant's conduct was unethical and detrimental to WLL clients who invested in that failed company. Thus, Plaintiffs fired the Defendant. Plaintiffs note that their decision to fire the Defendant was actually made by two WLL officials who were not involved in the alleged

---

[*]The record is substantial, but given the limited judicial review under the relevant law, the Court summarizes the critical facts to decide the parties' contentions.

2

securities violations about which the Defendant complaint.

The Defendant's evidence before the arbitration panel was that the rug acquisition was with the knowledge and consent of some of the Plaintiffs' employees and under a promissary note granting him and other investors that right. The Defendant's proof was that the Plaintiffs' rug investigation began eight months after he acquired those rugs. Defendant noted that the investigation that led to his dismissal was started shortly after his complaints about Plaintiffs' securities violations. These complaints involved the WEBAccess investment, a start-up technology company with which the Defendant and Plaintiffs were involved. The Defendant's testimony was Plaintiffs' real reason for his termination was the Defendant's complaints about Plaintiff's securities violations in connection with WEB Access. The Defendant elicited proof that Ken Wagner, one of the Plaintiffs' decisonmakers on his termination was aware of his complaints about the WEBAccess investment. Wagner described the Defendant as "kicking up a stink" about the Plaintiffs' handling of the WEBAccess investment and also received the defendants' e-mail refeering to the investors as being "defrauded". (Docket Entry No. 17-12 Transcript at pp. 147, 151).

## B. Conclusions of Law

The Federal Arbitration Act ("FAA") provides for limited judicial review of arbitration awards. 9 U.S.C. §§ 10-11. A statutory presumption is that arbitration awards will be confirmed. 9 U.S.C. § 9. Clear and convincing evidence is necessary to vacate such an award. Anderson. Inc. v. Horton Farms, Inc., 166 F.3d 308, 328 (5th Cir. 1998); Lifecare Intl. Inc. v. CD Med., Inc., 68 F.3d 429. 433 (11th Cir. 1995). Judicial deference is owed to the arbitrator's decision. Lattimer-Stevens Co. v. United Steelworkers of Am., AFL-CIO. Dist. 27, 913 F.2d 1166. 1169 (6th Cir. 1990). In a word, the action, this Court does not conduct a de novo review of the arbitration

3

proceedings, Dawahare v. Spencer. 210 F. 3d 666,669 (6th Cir. 2000). "[T]o engage in a more extensive review of arbitration awards ... would undermine the goal of the arbitration process: to resolve disputes efficiently while avoiding extended litigation". Id.

Under FAA, an arbitration award may be vacated: "(1) Where the award was procured by corruption, fraud, or undue means; (2) Where there was evident partiality or corruption in the arbitrators or either of them; (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy or of any other misbehavior by which the rights of any party have been prejudiced; [or] (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a)(1)(2)(3) and (4). A court may also refuse to enforce an arbitration award on equitable grounds. 9 U.S.C. § 2.

In addition to these statutory grounds, courts may vacate an arbitration award where the arbitrators have "manifestly disregarded the law." Dawahare, 210 F.3d at 669 (citing Glennon v. Dean Witter Reynolds, Inc., 83 F.3d 132, 136 (6th Cir. 1996)). For "manifest disregard of the law," a Court must find: "(1) that the applicable legal principle is clearly defined; (2) not subject to reasonable debate; and (3) the arbitrators refused to heed that legal principle. Dawahare, 210 F.3d at 669.

The TPPA states, in relevant part that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about illegal activities." Tenn. Code Ann. § 50-1-304 (emphasis added). See Smith v. Bridgestone/Firestone, Inc., 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999).

4

As applied here, the Plaintiffs' cited reason for the Defendant's termination was his ethical violation of self-dealing to the detriment of Plaintiffs' clients. The Defendant does not dispute the conduct, but he insists his acquisition of the rugs was permitted under a promissory note and that this conduct had occurred eight months prior to the Plaintiffs' investigation. Defendant adds that he disclosed his questionable conduct to Plaintiffs' employees who agreed to his acquisition of the rugs. The Plaintiffs contend that the proof reflects that the decisionmakers on Defendant's termination were not involved or aware of Defendant's complaint about the WEBAccess investment.

In any event, the arbitration record reflects proof of two distinct reasons for Plaintiffs' termination of the Defendant. With dual causes for Defendant's termination, the Court concludes that a TPPA claim cannot stand because the Defendant's protected conduct complaining about the securities violation was not the sole reason for his termination. The Court concludes that the arbitration panel's decision on this claim reflects a manifest disregard of the express terms of the TPPA.

For his common law wrongful discharge claim under Tennessee law, the Defendant had to prove:

(1) that an employment at-will relationship existed;

(2) that the employee was discharged;

(3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional statutory, or regulatory provision; and

(4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

5

Crews v. Buckman Laboratories International, Inc., 78 S.W.3d 852, 862 (Tenn. 2002).

As noted earlier, the Plaintiffs argue that because its decision makers on the Defendant's termination did not know about the Defendant's securities complaint, the Defendant cannot establish a prima facie showing for common law wrongful discharge, as required by Tennessee law. Without the ability to establish a prima facie case, Plaintiffs contend that the Defendant could not have succeeded in his claim of wrongful discharge because under Tennessee law, to establish the causal relationship between the activity and the employee's termination, the person who terminated the employee must be aware of the employee's protected activity.

Plaintiffs cite Pannell v. Future Now, 895 F.Supp. 196 (W.D. Tenn. 1995). There, the person who discharged the employee testified that he did not know about the terminating individual employee's complaints of insurance fraud. The court granted the employer's motion for summary judgment, applying Tennessee law on retaliatory discharge and concluded that: "In a whistleblowing case, it is critical that the discharging individual have knowledge of the plaintiff's "whistleblowing." Obviously, without knowledge of a plaintiff's whistleblowing or intention to wistleblow, there can be no retaliation for whistleblowing activity." Id. at 200. The court stated that, "[m]ere coincidence of time is insufficient to prove causation." Id. at 201.

Plaintiffs cite Sacks v. Jones Printing Company, Inc., 2006 U.S. Dist LEXIS 16075 (E.D. Tenn. 2006), where the district court dismissed an employee's claim that he was terminated because he complained about illegal chemical dumping. Yet, the person who terminated the employee did not know about his complaints. The Court stated: " Plaintiff has not presented any evidence Burns, who actually informed Plaintiff of his termination, knew of Plaintiff's complaints to Moates about the chemical dumping or Plaintiff's threats to complain to the human resource department." Id., at

6

\* 23.

Here, Ken Wagner who was one of the decisionmakers for the Plaintiffs on the Defendant's termination, testified that he received an e-mail from the Defendant in which the Defendant used the word "defrauded" in reference to the losses of WEBAccess investors. (Docket Entry No. 17-12 Transcript at p. 151). Wagner testified that he was aware of the Defendant's complaints about the WEBAccess and described the Defendant as " kicking up a stink" about the losses of the WEBAccess investors. Id. at 147.

Given the limited scope of judicial review, the Court concludes that the arbitration panel's findings of a securities violations by the Plaintiffs, satisfies the protected activity on public policy elements of the Defendant's common law claim for retaliatory discharge. With the findings of a securities violation, two reasons are established for the Defendant's discharge, namely the ethical violation and Defendant's complaints about the Plaintiffs' securities violations. Three evidentiary facts support the arbitration panel's obvious decision that the Defendant's complaints about the Plaintiffs' conduct involving the securities of the WEBAccess investment was the real cause of the Defendant's terminaiton: (1) the timing of the Plaintiffs' investigation eight months after the rug incident; (2) the Plaintiffs started its investigation of the rug incident shortly after Defendant's vocal complaints about the Plaintiffs' conduct on the WEBAccess investment; and (3) Wagner's receipt of the Defendant' e-mail and his awareness of the Defendant "kicking up a stink" about the Plaintiffs' handling of the WEBAccess investment that the arbitration panel found to constitute securities violations. These collective facts could support the arbitration panel's finding that the Defendant's complaint about Plaintiffs' securities violations was the motivating or substantial factor in the Plaintiffs' termination of the Defendant.

With the undisputed finding of a securities violation and the cited proof, the Court concludes that the arbitration panel's decision did not show manifest disregard for Tennessee's common law on retaliatory discharge. The Court agrees with Plaintiffs that any award under the TPPA would fail as a matter of law, but concludes that the Defendant's common law claim for retaliatory discharge is an adequate and independent basis for the arbitration panel's award.

Finally, the Court will not award any further relief beyond affirming of the award of the arbitration panel that is the source of any substantive relief. Thus, the Defendant's request for additional interest and attorney's fees is denied.

Thus, Plaintiffs motion to vacate (Docket Entry No. 1) should be denied and the Defendant's cross-motion to affirm (Docket Entry No. 12) should be granted on the merits, but should be denied on his request for additional interest and attorney's fees .

An appropriate Order is filed herewith.

**ENTERED** this the ____ day of February, 2007.

WILLIAM J. HAYNES, JR.
United States District Judge